EXHIBIT "1"

MIN

Loan Number:

# NOTE

FHA CASE NO.

AUGUST 2, 2006
[Date]

2740 DAHLIA WAY, RENO, NEVADA 89512
[Property Address]

## 1. PARTIES
"Borrower" means each person signing at the end of this Note, and the person's successors and assigns. "Lender" means
HOME MORTGAGE DIRECT LENDERS, A CALIFORNIA CORPORATION

and its successors and assigns.

## 2. BORROWER'S PROMISE TO PAY; INTEREST
In return for a loan received from Lender, Borrower promises to pay the principal sum of  EIGHTY-TWO
THOUSAND THREE HUNDRED FIFTY-SEVEN AND 00/100                                    Dollars
(U.S.$ 82,357.00        ), plus interest, to the order of Lender. Interest will be charged on unpaid principal,
from the date of disbursement of the loan proceeds by Lender, at the rate of   SIX AND 200/1000
percent (        6.200 %) per year

until the full amount of principal has been paid.

## 3. PROMISE TO PAY SECURED
Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same
date as this Note and called the "Security Instrument." The Security Instrument protects the Lender from losses which might
result if Borrower defaults under this Note.

## 4. MANNER OF PAYMENT
(A)    Time
Borrower shall make a payment of principal and interest to Lender on the first day of each month beginning
on    OCTOBER 1, 2006                          . Any principal and interest remaining on the first day of
SEPTEMBER 1, 2036                    , will be due on that date, which is called the "Maturity Date."

(B)    Place
Payment shall be made at   500 E. ESPLANADE DRIVE, 10TH FLOOR, OXNARD,
CALIFORNIA 93036

or at such other place as Lender may designate in writing by notice to Borrower.

(C)    Amount
Each monthly payment of principal and interest will be in the amount of U.S. $  504.41                      .
This amount will be part of a larger monthly payment required by the Security Instrument, that shall be applied to principal,
interest and other items in the order described in the Security Instrument.

(D)    Allonge to this Note for Payment Adjustments
If an allonge providing for payment adjustments is executed by Borrower together with this Note, the covenants of the
allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part
of this Note. (Check applicable box.)

☐ Growing Equity Allonge              ☐ Graduated  Payment Allonge

☐ Other  [specify]

## 5. BORROWER'S RIGHT TO PREPAY
Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty, on the first
day of any month. Lender shall accept prepayment on other days provided that Borrower pays interest on the amount prepaid
for the remainder of the month to the extent required by Lender and permitted by regulations of the Secretary. If Borrower
makes a partial prepayment, there will be no changes in the due date or in the amount of the monthly payment unless Lender
agrees in writing to those changes.

Borrower Initials:

MULTISTATE-FHA  FIXED RATE NOTE (6/96)
Document Systems, Inc. (800) 649-1362                                    Page 1 of 2



## 6. BORROWER'S FAILURE TO PAY

### (A) Late Charge for Overdue Payments

If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C) of this Note, by the end of fifteen calendar days after the payment is due, Lender may collect a late charge in the amount of FOUR AND 000/1000 percent ( 4.000 %) of the overdue amount of each payment.

### (B) Default

If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest. Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default. In many circumstances regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults. This Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

### (C) Payment of Costs and Expenses

If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorneys' fees for enforcing this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

## 7. WAIVERS

Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in pages 1 and 2 of this Note.

_____ (Seal)          _____ (Seal)
VANDA T. HO-CHING              -Borrower                                        -Borrower

_____ (Seal)          _____ (Seal)
                               -Borrower                                        -Borrower

_____ (Seal)          _____ (Seal)
                               -Borrower                                        -Borrower

TO BE PAID TO THE ORDER OF    Countrywide Bank, N.A.
WITHOUT RECOURSE
_____
THERESA M. TAGNER, ASSISTANT VICE PRESIDENT
HOME MORTGAGE DIRECT LENDERS, A CALIFORNIA CORPORATION

Pay to the order of:
Countrywide Home Loans, Inc.
Without Recourse
Countrywide Bank, N.A.
By: [signature]
Laurie Meder, SVP

Pay to the order of:
COUNTRYWIDE HOME LOANS SERVICING LP
Without Recourse
Countrywide Home Loans, Inc.
By: [signature]
Michele Sjolander, SVP

PAY TO THE ORDER OF

WITHOUT RECOURSE
COUNTRYWIDE HOME LOANS SERVICING LP

BY: [signature]
MICHELE SJOLANDER
EXECUTIVE VICE PRESIDENT

EXHIBIT "2"

DOC #
08/08/2006 04:08P Fee:00.00
BK1
Requested By
FOUNDERS TITLE COMPANY OF NEVADA
Washoe County Recorder
Kathryn L. Burke - Recorder

Assessor's Parcel Number:

Recording Requested By:
HOME MORTGAGE DIRECT LENDERS

And When Recorded Return To:
HOME MORTGAGE DIRECT LENDERS
601 W. MOANA, STE 1
RENO, NEVADA 89509
Loan Number:
Mail Tax Statements To:
COUNTRYWIDE HOME LOANS, INC., 400 COUNTRYWIDE WAY, SIMI VALLEY,
CALIFORNIA 93065

[Above This Line For Recording Data]

# DEED OF TRUST

FHA CASE NO.

MIN

THIS DEED OF TRUST ("Security Instrument") is made on AUGUST 2, 2006
The grantor is VANDA T. HO-CHING, A SINGLE WOMAN

("Borrower").

The trustee is FOUNDERS TITLE COMPANY
4860 VISTA BOULEVARD, SUITE 102, SPARKS, NEVADA 89436 ("Trustee").
The beneficiary is Mortgage Electronic Registration Systems, Inc. ("MERS") (solely as nominee for Lender, as
hereinafter defined, and Lender's successors and assigns). MERS is organized and existing under the laws of
Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-
MERS.

HOME MORTGAGE DIRECT LENDERS, A CALIFORNIA CORPORATION

("Lender")

is organized and existing under the laws of CALIFORNIA
and has an address of 601 W. MOANA, STE 1, RENO, NEVADA 89509

Borrower owes Lender the principal sum of EIGHTY-TWO THOUSAND THREE HUNDRED
FIFTY-SEVEN AND 00/100 Dollars (U.S. $ 82,357.00 ).
This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for
monthly payments, with the full debt, if not paid earlier, due and payable on SEPTEMBER 1, 2036.
This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest,
and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest,
advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of
Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower
irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located
in WASHOE County, Nevada:

Borrower Initials:

FHA NEVADA DEED OF TRUST - MERS
6/96

Page 1 of 9

DocMagic *eFerms* 800-649-1362
www.docmagic.com



SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS EXHIBIT "A".
A.P.N.:

which has the address of  2740 DAHLIA WAY

                                       [Street]

       RENO            , Nevada     89512     ("Property Address"):
      [City]                                [Zip Code]

    TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument; but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing or canceling this Security Instrument.

    BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

    THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

    UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
    1. Payment of Principal, Interest and Late Charge. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.
    2. Monthly Payment of Taxes, Insurance, and Other Charges. Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

    Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. § 2601 et seq. and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for

Borrower Initials: _____

**FHA NEVADA DEED OF TRUST - MERS**
6/96

                    Page 2 of 9

DocMagic *eForms* 800-649-1362
www.docmagic.com



Exhibit A

All that certain real property situate in the City of Reno, County of Washoe, State of Nevada, described as follows:

**PARCEL 1:**

Lot 121, in Block F of SIERRA GARDENS MOBILE HOME SUBDIVISION, according to the map thereof, filed in the office of the County Recorder of Washoe County, State of Nevada, on June 4, 1982, under Filing No and as Tract Map No. 2045.

**PARCEL 2:**

An undivided 1/209th interest in all of the common area of SIERRA GARDENS MOBILE HOME SUBDIVISION, according to the map thereof, filed in the office of the County Recorder of Washoe County, State of Nevada, on June 4, 1982, under Filing No as Tract Map No. 2045, as defined in that certain Declaration of Restrictions recorded August 14, 1984, in Book 2053, Page 377, under Filing No. Official Records.

APN:



unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for Items (a), (b), and (c).

3. **Application of Payments.** All payments under paragraphs 1 and 2 shall be applied by Lender as follows:

FIRST, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

SECOND, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

THIRD, to interest due under the Note;

FOURTH, to amortization of the principal of the Note; and

FIFTH, to late charges due under the Note.

4. **Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

5. **Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action

Borrower Initials: _____  _____  _____

FHA NEVADA DEED OF TRUST - MERS
6/98

Page 3 of 9

DocMagic €Farmxa 800-649-1362
www.docmagic.com



to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

6.  **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

7.  **Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement at the Note rate, and at the option of Lender shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

8.  **Fees.** Lender may collect fees and charges authorized by the Secretary.

9.  **Grounds for Acceleration of Debt.**

   (a)  **Default.** Lender may, except as limited by regulations issued by the Secretary in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

   (i)  Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

   (ii)  Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

   (b)  **Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including section 341(d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j - 3(d)) and with

Borrower Initials: _____

FHA NEVADA DEED OF TRUST - MERS
6/96

Page 4 of 9

DocMagic *eForms* 800-649-1362
www.docmagic.com



the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

    (i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

    (ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property, but his or her credit has not been approved in accordance with the requirements of the Secretary.

    (c) **No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

    (d) **Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

    (e) **Mortgage Not Insured.** Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within   60   DAYS from the date hereof, Lender may, at its option require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to   60   DAYS   from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

    10. **Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

    11. **Borrower Not Released; Forbearance by Lender Not a Waiver.** Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

    12. **Successors and Assigns Bound; Joint and Several Liability; Co-Signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

Borrower Initials: XFHC

FHA NEVADA DEED OF TRUST - MERS
6/96

Page 5 of 9

*DocMagic* eForms 800-649-1362
www.docmagic.com



**13. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**14. Governing Law; Severability.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**15. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**16. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

**17. Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

Borrower Initials: _____ _____ _____ _____

FHA NEVADA DEED OF TRUST - MERS
6/96

Page 6 of 9

DocMagic ℰℛℴ𝓃𝓂𝓈 800-649-1362
www.docmagic.com



**18. Foreclosure Procedure.** If Lender requires immediate payment in full under paragraph 9, Lender may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold, and shall cause such notice to be recorded in each county in which any part of the Property is located. Lender shall mail copies of the notice as prescribed by applicable law to Borrower and to the persons prescribed by applicable law. Trustee shall give public notice of sale to the persons and in the manner prescribed by applicable law. After the time required by applicable law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 et seq.) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this paragraph 18 or applicable law.

**19. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Such person or persons shall pay any recordation costs. Lender may charge such person or persons a fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under applicable law.

**20. Substitute Trustee.** Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon the Trustee herein and by applicable law.

**21. Assumption Fee.** If there is an assumption of this loan, Lender may charge an assumption fee of U.S. $ 25.00

**22. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument.

[Check applicable box(es)].

☐ Condominium Rider     ☐ Graduated Payment Rider     ☐ Growing Equity Rider

☒ Planned Unit Development Rider     ☐ Adjustable Rate Rider     ☐ Rehabilitation Loan Rider

☐ Non-Owner Occupancy Rider     ☒ Other [Specify]   MANUFACTURED HOME RIDER TAX EXEMPT FINANCING RIDER

Borrower Initials:

FHA NEVADA DEED OF TRUST - MERS
6/96

Page 7 of 9

*DocMagic ⊘Forms 800-649-1362*
*www.docmagic.com*



BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in pages 1 through 7 of this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

_____ (Seal)
VANDA T. HO-CHING               -Borrower

_____ (Seal)
                                -Borrower

_____ (Seal)
                                -Borrower

_____ (Seal)
                                -Borrower

_____ (Seal)
                                -Borrower

_____ (Seal)
                                -Borrower

Witness:                        Witness:

_____    _____

FHA NEVADA DEED OF TRUST - MERS        Page 8 of 9        DocMagic ℰℱⁱⁱⁱ 800-649-1362
6/96                                                      www.docmagic.com



STATE OF NEVADA, WASHOE                          County ss:

This instrument was acknowledged before me on August 2, 2006
by VANDA T. HO-CHING



DONNA HEINSON
Notary Public - State of Nevada
Appointment Recorded in Washoe County
No: 01-70617-2 - Expires September 7, 2009

_____
                                          Notary Public

FHA NEVADA DEED OF TRUST - MERS              Page 9 of 9              DocMagic *eForms* 800-649-1362
6/96                                                                 www.docmagic.com



MIN:                                          Loan Number:

# MANUFACTURED HOME RIDER
# TO MORTGAGE, DEED OF TRUST
# OR OTHER SECURITY INSTRUMENT

THIS MANUFACTURED HOME RIDER is made this   2nd   day of AUGUST, 2006           ,
and is incorporated into and shall be deemed to amend and supplement that certain Mortgage, Deed of Trust
or Other Security Instrument (the "Security Instrument") of the same date hereof given by the undersigned
(the "Borrower(s)") to secure Borrower's Promissory Note (or Manufactured Home Retail Installment
Contract) to HOME MORTGAGE DIRECT LENDERS, A CALIFORNIA
CORPORATION                                                (the "Note Holder")
of the same date hereof (the "Note"), and relating to the property described in the Security Instrument and
located at:

          2740 DAHLIA WAY, RENO, NEVADA 89512

The following provisions are applicable to the Security Instrument, including those marked and completed
(where applicable):

1. ☒ **DESCRIPTION OF REAL PROPERTY.** The description of the real property set forth in the
Security Instrument is amended by the addition of the following:

"Together with all improvements constructed upon, affixed to or located upon the above described real
property, including without limitation any residential dwelling located upon or to be located thereon,
which dwelling is or may be a manufactured home, as hereinbelow described, which manufactured
home is or upon placement and affixation shall be conclusively deemed to be real estate (the
"Manufactured Home"):

Make:                          Model:                        Serial Number:
COMMODORE                      BAYSHORE
Year Built: 1984               Length and Width: 24 X 48

☒ No Certificate of Title has been issued   ☐ Certificate of Title No.
    HUD tag #'s:

2. ☐ **MANUFACTURED HOME AS PERSONAL PROPERTY SECURITY.** The Note is also secured
by a security interest in favor of Note Holder in the following described manufactured home ("Manufactured
Home"), which is located on the real property described in the Security Instrument:

Make:                          Model:                        Serial Number:

Year Built:                    Length and Width:

☐ No Certificate of Title has been issued   ☐ Certificate of Title No.

Borrower Initials:

MANUFACTURED HOME RIDER TO MORTGAGE, DEED OF TRUST          DocMagic *eFormes* 800-649-1362
OR OTHER SECURITY INSTRUMENT                                        www.docmagic.com
07/28/06                          Page 1 of 3



**3. ADDITIONAL COVENANTS OF BORROWER(S) RELATING TO MANUFACTURED HOME.** If Paragraph 1 has been marked and completed, Borrower(s) agree(s) to comply with all State and local laws and regulations relating to the affixation of the Manufactured Home to the real property described herein including, but not limited to, surrendering the Certificate of Title (if required), obtaining any governmental approval and executing any documentation necessary to classify the Manufactured Home as real property under State and local law.

The Manufactured Home shall be at all times and for all purposes permanently affixed to and part of the real property described herein and shall not be removed from said real property. Borrower(s) covenant(s) that affixing the Manufactured Home to the real property described herein does not violate any zoning laws or other local requirements applicable to manufactured homes.

If Paragraph 2 has been marked and completed, Borrower(s) agree(s) and covenant(s) that the Manufactured Home is and shall remain personal property, severable and separate from the real property described in the Security Instrument, and agree(s) and covenant(s) not to take any action, or fail to take any action, which would result in a change in such status.

**4. SECURITY AGREEMENT AND FINANCING STATEMENT.** This Security Instrument shall be a security agreement granting Lender a first and prior security interest in all of Borrower's right, title and interest in, to and under any personal property ("Personal Property") which under and within the meaning of the applicable State laws is and cannot be classified and considered real property, if any. Personal Property shall also include the Manufactured Home described in Paragraph 2 hereof, if applicable. In the event of any foreclosure sale, whether made by Trustee or a substitute trustee, or under judgment of the court or pursuant to a power of sale, all of the Property and Personal Property may, at the option of Lender, be sold as a whole or any part thereof. It shall not be necessary to have present at the place of such sale the Personal Property or any part thereof. Lender, as well as Trustee or any substitute trustee on Lender's behalf, shall have all the rights, remedies and recourses with respect to the Personal Property afforded to a "Secured Party" by the applicable state laws in addition to and not in limitation of the other rights and recourse afforded Lender and/or Trustee or any substitute trustee under this Security Instrument. Borrower(s) shall, upon demand, pay to Lender the amount of any and all expenses, including the fees and disbursements of Lender's legal counsel and of any experts and agents which Lender may incur in connection with: (i) the making and/or administration of this Security Instrument; (ii) the custody, preservation, use or operation of, or the sale or collection from, or other realization upon any property, real and/or personal, described in this Security Instrument; (iii) the exercise or enforcement of any of the rights of Lender under this Security Instrument; or (iv) the failure by Borrower(s) to perform or observe any of the provisions or covenants in this Security Instrument.

Lender may, at its election, at any time after the delivery of this Security Instrument, sign one or more copies of this Security Instrument in order that such copies may be used as a financing statement under the applicable State laws. Lender's signature need not be acknowledged, and is not necessary to the effectiveness hereof as a deed of trust, a security agreement, or (unless otherwise required by applicable law) a financing statement.

**5. RESPONSIBILITY FOR IMPROVEMENTS.** Lender shall not be responsible for any improvements made or to be made, or for their completion relating to the real property, and shall not in any way be considered a guarantor of performance by any person or party providing or effecting such improvements.

Borrower Initials:

MANUFACTURED HOME RIDER TO MORTGAGE, DEED OF TRUST
OR OTHER SECURITY INSTRUMENT
07/28/06                                                    Page 2 of 3

DocMagic ❤️ 800-649-1362
www.docmagic.com



**6. INVALID PROVISIONS.** If any provision of this Security Instrument is declared invalid, illegal or unenforceable by a court of competent jurisdiction, then such invalid, illegal or unenforceable provisions shall be severed from this Security Instrument and the remainder enforced as if such invalid, illegal or unenforceable provision is not a part of this Security Instrument.

Executed this                    day of

_____ (Seal)          _____ (Seal)
VANDA T. HO-CHING          -Borrower          -Borrower


_____ (Seal)          _____ (Seal)
                           -Borrower          -Borrower


_____ (Seal)          _____ (Seal)
                           -Borrower          -Borrower

MANUFACTURED HOME RIDER TO MORTGAGE, DEED OF TRUST
OR OTHER SECURITY INSTRUMENT
07/28/06                                    Page 3 of 3

DocMagic *eForms* 800-649-1362
www.docmagic.com

Page: 13 of 17



FHA Case Number:
Loan Number:

# FHA PLANNED UNIT DEVELOPMENT RIDER

**THIS PLANNED UNIT DEVELOPMENT RIDER is made this**     2nd     **day of**
AUGUST, 2006     **, and is incorporated into and shall be deemed to amend and**
supplement the Mortgage, Deed of Trust or Security Deed ("Security Instrument") of the same date given
by the undersigned ("Borrower") to secure Borrower's Note ("Note") to   HOME MORTGAGE
DIRECT LENDERS, A CALIFORNIA CORPORATION
("Lender") of the same date and covering the Property described in the Security Instrument and located at:

<div align="center">

2740 DAHLIA WAY, RENO, NEVADA 89512

[Property Address]

</div>

The Property is part of a planned unit development ("PUD") known as:

<div align="center">

SIERRA GARDENS MOBILE HOME SUBDIVISION

[Name of Planned Unit Development]

</div>

    **PUD COVENANTS.** In addition to the covenants and agreements made in the Security Instrument,
Borrower and Lender further covenant and agree as follows:

    A.   So long as the Owners Association (or equivalent entity holding title to common areas and
      facilities), acting as trustee for the homeowners, maintains, with a generally accepted insurance
      carrier, a "master" or "blanket" policy insuring the property located in the PUD, including all
      improvements now existing or hereafter erected on the mortgaged premises, and such policy is
      satisfactory to Lender and provides insurance coverage in the amounts, for the periods, and against
      the hazards Lender requires, including fire and other hazards included within the term "extended
      coverage," and loss by flood, to the extent required by the Secretary, then: (i) Lender waives the
      provision in Paragraph 2 of this Security Instrument for the monthly payment to Lender of
      one-twelfth of the yearly premium installments for hazard insurance on the Property, and (ii)
      Borrower's obligation under Paragraph 4 of the Security Instrument to maintain hazard insurance
      coverage on the Property is deemed satisfied to the extent that the required coverage is provided
      by the Owners' Association policy. Borrower shall give Lender prompt notice of any lapse in
      required hazard insurance coverage and of any loss occurring from a hazard. In the event of a
      distribution of hazard insurance proceeds in lieu of restoration or repair following a loss to the
      Property or to common areas and facilities of the PUD, any proceeds payable to Borrower are
      hereby assigned and shall be paid to Lender for application to the sums secured by this Security
      Instrument, with any excess paid to the entity legally entitled thereto.

    B.   Borrower promises to pay all dues and assessments imposed pursuant to the legal instruments
      creating and governing the PUD.

Borrower Initials: _____    _____    _____    _____

FHA – MULTISTATE PUD RIDER
(7/91)                   Page 1 of 2               *DocMagic €Rumos 800-649-1362*
                                                           *www.docmagic.com*



C. If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph C shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this PUD Rider.

_____ (Seal)  
VANDA T. HO-CHING        Borrower

_____ (Seal)  
                        Borrower

_____ (Seal)  
                        Borrower

_____ (Seal)  
                        Borrower

_____ (Seal)  
                        Borrower

_____ (Seal)  
                        Borrower

Page: 15 of 17



APN:

Loan No.:

## NEVADA HOUSING DIVISION
## TAX-EXEMPT FINANCING RIDER
### (to Deed of Trust)

THIS TAX-EXEMPT FINANCING RIDER is made this 2nd day of August , 20 06 , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed ("Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Note ("Note") to:

NEVADA HOUSING DIVISION

(Insert lender's name)

("Lender") of the same date and covering the property described in the Security Instrument and located at:

2740 DAHLIA WAY                                                                 RENO, NV 89512

(Insert property address)

In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

Lender, or such of its successors or assigns as may by separate instrument assume responsibility for assuring compliance by the Borrower with the provisions of this Tax-Exempt Financing Rider, may require immediate payment in full of all sums secured by this Security Instrument if:

(a)     All or part of the Property is sold or otherwise transferred by Borrower to a purchaser or other transferee:

(i)     Who cannot reasonably be expected to occupy the property as a principal residence within a reasonable time after the sale or transfer, all as provided in Section 143(c) and (i)(2) of the Internal Revenue Code; or

(ii)     Who has had a present ownership interest in a principal residence during any part of the three-year period ending on the date of the sale or transfer, all as provided in Section 143(d) and (i)(2) of the Internal Revenue Code (except that "100 percent" shall be substituted for "95 percent or more" where the latter appears in Section 143 (d)(1); or

(iii)     At an acquisition cost which is greater than 90 percent of the average area purchase price (greater than 110 percent for targeted area residences), all as provided in Section 143(e) and (i)(2) of the Internal Revenue Code; or

EXH J
Revised 08/01/05

Page 1 of 2



    (iv)    Who has a gross family income in excess of the applicable percentage of applicable median family income as provided in Section 143(f) and (i)(2) of the Internal Revenue Code; or

    (b)    Borrower fails to occupy the property described in the Security Instrument without prior written consent of Lender or its successors or assigns described at the beginning of this Tax-Exempt Financing Rider, or

    (c)    Borrower omits or misrepresents a fact that is material with respect to the provisions of Section 143 of the Internal Revenue Code in an application for the loan secured by this Security Instrument.

References are to the 1986 Internal Revenue Code as amended in effect on the date of execution of the Security Instrument and are deemed to include the implementing regulations.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions of this Tax-Exempt Financing Rider.



_____          _____
      Borrower                                    Borrower
Vanda T. Ho-Ching

EXHIBIT "3"

| Fill in this information to identify your case and this filing: | |
|---|---|
| Debtor 1 | **VANDA T. HO CHING** |
| | First Name      Middle Name      Last Name |
| Debtor 2 (Spouse, if filing) | |
| | First Name      Middle Name      Last Name |
| United States Bankruptcy Court for the: | DISTRICT OF NEVADA |
| Case number | |

☐ Check if this is an amended filing

Official Form 106A/B

# Schedule A/B: Property

12/15

In each category, separately list and describe items. List an asset only once. If an asset fits in more than one category, list the asset in the category where you think it fits best. Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

**Part 1:**   Describe Each Residence, Building, Land, or Other Real Estate You Own or Have an Interest In

1. **Do you own or have any legal or equitable interest in any residence, building, land, or similar property?**

☐ No. Go to Part 2.

☑ Yes. Where is the property?

| 1.1 | **What is the property?** Check all that apply | Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property*. |
|---|---|---|
| **2740 DAHLIA WAY** Street address, if available, or other description | ☐ Single-family home <br> ☐ Duplex or multi-unit building <br> ☐ Condominium or cooperative | |
| | ☐ Manufactured or mobile home | **Current value of the entire property?**    **Current value of the portion you own?** |
| **Reno**    **NV**    **89512-0000** <br> City     State     ZIP Code | ☐ Land <br> ☐ Investment property <br> ☐ Timeshare <br> ☐ Other | $133,000.00      $133,000.00 |
| | **Who has an interest in the property?** Check one | **Describe the nature of your ownership interest (such as fee simple, tenancy by the entireties, or a life estate), if known.** |
| **Washoe** <br> County | ☑ Debtor 1 only <br> ☐ Debtor 2 only <br> ☐ Debtor 1 and Debtor 2 only <br> ☐ At least one of the debtors and another | |
| | **Other information you wish to add about this item, such as local property identification number:** | ☐ Check if this is community property (see instructions) |

2. **Add the dollar value of the portion you own for all of your entries from Part 1, including any entries for pages you have attached for Part 1. Write that number here.........................................................=>**     $133,000.00

**Part 2:**   Describe Your Vehicles

**Do you own, lease, or have legal or equitable interest in any vehicles, whether they are registered or not?** Include any vehicles you own that someone else drives. If you lease a vehicle, also report it on *Schedule G: Executory Contracts and Unexpired Leases.*

Software Copyright (c) 1996-2016 Best Case, LLC - www.bestcase.com         Best Case Bankruptcy

**Fill in this information to identify your case:**

| | |
|---|---|
| Debtor 1 | **VANDA T. HO CHING** |
| | First Name — Middle Name — Last Name |
| Debtor 2 | |
| (Spouse if, filing) | First Name — Middle Name — Last Name |
| United States Bankruptcy Court for the: | DISTRICT OF NEVADA |
| Case number | |
| (if known) | |

☐ Check if this is an amended filing

Official Form 106D

## Schedule D: Creditors Who Have Claims Secured by Property

12/15

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, copy the Additional Page, fill it out, number the entries, and attach it to this form. On the top of any additional pages, write your name and case number (if known).

**1. Do any creditors have claims secured by your property?**

☐ No. Check this box and submit this form to the court with your other schedules. You have nothing else to report on this form.

■ Yes. Fill in all of the information below.

**Part 1:** List All Secured Claims

**2. List all secured claims.** If a creditor has more than one secured claim, list the creditor separately for each claim. If more than one creditor has a particular claim, list the other creditors in Part 2. As much as possible, list the claims in alphabetical order according to the creditor's name.

| | | Column A<br>Amount of claim<br>Do not deduct the value of collateral. | Column B<br>Value of collateral that supports this claim | Column C<br>Unsecured portion<br>If any |
|---|---|---|---|---|
| **2.1** **BSI FINANCIAL SVSC** | Describe the property that secures the claim: | $141,368.00 | $133,000.00 | $8,368.00 |

Creditor's Name

Describe the property that secures the claim:

**2740 DAHLIA WAY Reno, NV 89512**
**Washoe County**

**PO BOX 517314**
**Titusville, PA 16354**

Number, Street, City, State & Zip Code

As of the date you file, the claim is: Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

Nature of lien. Check all that apply.
☐ An agreement you made (such as mortgage or secured car loan)

**Who owes the debt?** Check one.
■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ Check if this claim relates to a community debt

☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
☐ Other (including a right to offset) _____

Date debt was incurred _____  Last 4 digits of account number  **8151**

| | |
|---|---|
| Add the dollar value of your entries in Column A on this page. Write that number here: | $141,368.00 |
| If this is the last page of your form, add the dollar value totals from all pages. Write that number here: | $141,368.00 |

**Part 2:** List Others to Be Notified for a Debt That You Already Listed

Use this page only if you have others to be notified about your bankruptcy for a debt that you already listed in Part 1. For example, if a collection agency is trying to collect from you for a debt you owe to someone else, list the creditor in Part 1, and then list the collection agency here. Similarly, if you have more than one creditor for any of the debts that you listed in Part 1, list the additional creditors here. If you do not have additional persons to be notified for any debts in Part 1, do not fill out or submit this page.

☐ Name, Number, Street, City, State & Zip Code
**ENTRA DEFAULT SOLUTION LLC**
**1355 WILLOW WAY STE 115**
**Concord, CA 94520**

On which line in Part 1 did you enter the creditor?  **2.1**

Last 4 digits of account number ___

EXHIBIT "4"

**EXHIBIT "4"**

1.    The total indebtedness due and owing under the Note and Deed of Trust as of the date set forth below, exclusive of attorney fees, other miscellaneous costs and interest that continues to accrue is as follows:

| | | |
|---|---|---|
| Principal Balance | | $131,150.46 |
| Interest | 02/25/2018 | $7,475.66 |
| Escrow Advance | | $6,217.34 |
| Recoverable Balance | | $1,902.01 |
| Suspense Balance | | $-353.99 |
| Grand Total | | $146,391.48 |

Attorney fees and cost plus other miscellaneous costs, if any, must be added to this figure.

2.    Since the filing of the instant petition on October 27, 2016, the Debtor has failed to tender the following post-petition mortgage payments that have come due under the Note:

| | | |
|---|---|---|
| 6      Payments due at   $720.07 each | | $4,320.42 |
| **Post-Petition Suspense:** | | $581.68 |
| **Total:** | | $4,320.42 |

3.    An additional payment of $720.07 will come due on the first day of March and the first day of each month thereafter.

JD/B46784                                          5

EXHIBIT "5"


BSI Financial Services

| Loan # | |
|---|---|
| Borrower | Ho-Ching |
| BK Case # | 16-51329 |
| Date Filed | 10/24/2016 |
| First Post Petition | |
| Due Date | 11/1/2016 |
| POC Covers | 8/1/15 – 10/1/16 |

**Payment Changes**

| Date | P&I | Escrow | Total | Notice Filed |
|---|---|---|---|---|
| 11/1/2016 | $566.78 | $115.73 | $682.51 | |
| 7/1/2017 | $566.78 | $153.29 | $720.07 | PCN |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

| Date | Amount Rcvd | Post Pet Due Date | Contractual Due Date | Amt Due | Over/Short | Suspense Credit | Suspense Debit | Suspense Balance | Comments |
|---|---|---|---|---|---|---|---|---|---|
| 11/30/2016 | $695.00 | 11/1/2016 | 8/1/2015 | $682.51 | $12.49 | | | | |
| 1/12/2017 | $465.00 | | | | $465.00 | | | | |
| 1/24/2017 | $465.00 | 12/1/2016 | 9/1/2015 | $682.51 | -$217.51 | | | | |
| 2/7/2017 | $465.00 | 1/1/2017 | 10/1/2015 | $682.51 | -$217.51 | | | | |
| 3/7/2017 | $465.00 | | | | $465.00 | | | | |
| 3/20/2017 | $465.00 | | | | $465.00 | | | | |
| 3/21/2017 | $165.00 | | | | $165.00 | | | | |
| 4/4/2017 | $565.00 | 2/1/2017 | 11/1/2015 | $682.51 | -$117.51 | | | | |
| 4/5/2017 | | 3/1/2017 | 12/1/2015 | $682.51 | -$682.51 | | | | |
| 5/15/2017 | $465.00 | | | | $465.00 | | | | |
| 5/24/2017 | $465.00 | 4/1/2017 | 1/1/2016 | $682.51 | -$217.51 | | | | |
| 6/13/2017 | $465.00 | 5/1/2007 | 2/1/2016 | $682.51 | -$217.51 | | | | |
| 8/7/2017 | $233.00 | | | | $233.00 | | | | |
| 9/6/2017 | $232.50 | 6/1/2017 | 3/1/2016 | $682.51 | -$450.01 | | | | |
| 9/14/2017 | $233.00 | | | | $233.00 | | | | |
| 10/3/2017 | $300.00 | | | | $300.00 | | | | |
| 10/30/2017 | $300.00 | 7/1/2017 | 4/1/2016 | $720.07 | -$420.07 | | | | |
| 11/28/2017 | $300.00 | | | | $300.00 | | | | |
| 12/14/2017 | | | | | $0.00 | | | | |
| 2/2/2018 | $340.00 | 8/1/2017 | 5/1/2016 | $750.07 | -$410.07 | | | | |
| | | | | | $0.00 | | | | |
| Past due | | 9/1/2017 | | $720.07 | -$720.07 | | | | |
| | | 10/1/2017 | | $720.07 | -$720.07 | | | | |
| | | 11/1/2017 | | $720.07 | -$720.07 | | | | |
| | | 12/1/2017 | | $720.07 | -$720.07 | | | | |
| | | 1/1/2018 | | $720.07 | -$720.07 | | | | |
| | | 2/1/2018 | | $720.07 | -$720.07 | | | | |
| | | | | | $0.00 | | | | |
| | | | | | $0.00 | | | | |
| | | | | | $0.00 | | | | |
| | | | | | $0.00 | | | | |
| | | | | | $0.00 | | | | |
| | | | | | $0.00 | | | | |

EXHIBIT "6"

Nathan Smith, Nevada Bar No.12642
MALCOLM ♦ CISNEROS, A Law Corporation
608 South 8th Street
Las Vegas, Nevada 89101
Phone: (949) 252-9400
Facsimile: (702) 382-0925
nathan@mclaw.org

Attorneys for BSI Financial Services

**E-FILED -----**

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br>VANDA T. HO-CHING<br><br>          Debtor, | Chapter 13<br><br>Case No. 16-51329-btb<br><br>Hearing Date: April 11, 2018<br>Hearing Time: 10:00 am<br><br>Location: C. Clifton Young Federal Building<br>Courtroom No. 2 |

### ORDER FOR RELIEF FROM THE AUTOMATIC STAY

The Motion for Relief from Automatic Stay of BSI Financial Services and its successors and/or assigns came on regularly for hearing before this court on April 11, 2018, appearances as noted on the record. No timely opposition having been filed, the court being fully advised in the

premises and good cause appearing:

IT IS HEREBY ORDERED that the Motion for Relief from the Automatic Stay be, and hereby is granted.

IT IS FURTHER ORDERED that all stay provisions are hereby terminated as to real property commonly known as 2740 Dahlia Way, Reno, NV 89512.

IT IS FURTHER ORDERED that the 14-day stay of Federal Rule of Bankruptcy Procedure 4001(a)(3) is waived.


SUBMITTED BY:


/s/Nathan F. Smith
—————————————————————
Nathan F. Smith
Nevada Bar No. #12642
608 South 8th Street
Las Vegas, Nevada 89101
(800) 741-8806 Phone
Attorneys for Movant

## RULE 9021 CERTIFICATION

In accordance with Local Rule 9021, counsel submitting this document certifies that that order accurately reflects the court's ruling and that:

____    The Court has waived the requirement set forth in LR 9021(b)(1).

____    No party appeared at the hearing or filed an objection to the motion.

____    I have delivered a copy of this proposed order to all counsel who appeared at the hearing, and any unrepresented parties who appeared at the hearing, and each has approved or disapproved the order, or failed to respond, as indicated below [list each party and whether the party has approved, disapproved, or failed to respond to the document]:

_X_    I certify that this is a case under Chapter 7 or 13, that I have served a copy of this order with the motion pursuant to LR 9014(g), and that no party has objected to the form or content of the order.

*/s/Nathan F. Smith*
Nathan F. Smith
###